**Maria RIZZI, Plaintiff,**

v.

**Judith MASON, Defendant.**

**No. C.A. 99C–09–271–JRJ.**

Superior Court of Delaware, New Castle County.

Submitted: April 2, 2002.
Decided: May 22, 2002.

Kenneth M. Roseman, Esquire, Ciconte, Roseman & Wasserman, Wilmington, for Plaintiff.

Cynthia Beam, Esquire, Reger & Rizzo, Wilmington, for Defendant.

## MEMORANDUM OPINION

JURDEN, J.

Defendant, Judith Mason, has filed a post-trial Motion for a New Trial, or in the Alternative, Remittitur. This personal injury case arises from a motor vehicle collision which occurred on May 8, 1998. Plaintiff was driving on Delaware Route 7 in New Castle County when her vehicle was struck by a vehicle operated by Defendant. Plaintiff alleged that as a proximate result of Defendant's negligence she sustained cervical disc and soft tissue injuries. Defendant stipulated prior to trial that liability was conceded and only causation and damages remained in dispute. This matter was tried before a jury on March 11—13, 2002. The jury awarded $340,680.29 to Plaintiff. In her motion, Defendant advances ten arguments as to why a new trial or remittitur is warranted. For the reasons that follow, Defendant's motion is DENIED.

## 1. *Exclusion of Defendant's Biomechanical Expert's Testimony*

Prior to trial, the Court granted Plaintiff's Motion in Limine to Exclude the Expert Testimony of Peter Cripton, a biomechanical engineer. Defendant sought to introduce two opinions from Cripton:

1. Based upon the scientific analysis outlined above, the loads placed on Ms. Rizzi's cervical and lumbar spine, during the incident of May 8, 1998, were comparable to or less than the loads her spine experienced during everyday activities.

2. The loads placed on Ms. Rizzi's spine were significantly less than the loads required to produce permanent injury to the structures of the spine, as documented in the biomechanical literature.

The Court excluded Cripton's opinion that the force of the impact was comparable to or less than "everyday" forces for two reasons. First, Defendant offered no expert medical testimony that would make Cripton's opinion concerning the amount of the force a relevant fact for the jury's consideration. Defendant admitted that her medical expert, Dr. Townsend, was not going to render an opinion at trial that "everyday forces" could *not* have caused an injury to Plaintiff or an injury of the magnitude Plaintiff claimed. In fact, Dr. Townsend offered no opinion on the amount of force, or lack of force, that was required to cause Plaintiff's injuries. In other words, Defendant had no expert medical testimony establishing a correlation between the force (or lack of force) generated upon impact and Plaintiff's injuries. Dr. Townsend did not rely on Cripton's opinion to formulate his medical causation opinion. Defendant argued that Cripton's report was relevant because it explained the "general forces" caused to the body "in this particular impact." In

trying to ascertain the relevance of Cripton's opinion in the absence of expert medical testimony establishing a correlation, the Court responded:

> ...if you're not going to have a doctor tie up the general [forces] to the specific [injuries], then isn't it far too prejudicial to have the general out there so that the jury extrapolates without competent medical testimony relating the biomechanical expert's opinions to the plaintiff's specific [injuries]? [1]

After hearing extensive argument, the Court concluded that without such testimony from Dr. Townsend, Cripton's opinion was irrelevant, highly prejudicial, and should be excluded.[2] Based on Defendant's argument, the Court understood that Defendant intended to argue to the jury that (1) because the impact generated so little force, Plaintiff's injuries could not be as severe as she alleged, and (2) Plaintiff could have received the same injuries performing daily activities and therefore her injuries were not proximately caused by the collision. Either inference would be improper under *Davis v. Maute*[3] and Delaware Rule of Evidence 403. Moreover, the second inference flies in the face of the undisputed, conclusive medical testimony that the collision caused injury to plaintiff and is therefore improper under *Amalfitano v. Baker*.[4]

Defendant's reliance on *Kelly v. McHaddon*[5] is unavailing. In *Kelly*, the medical expert *relied* on the biomechanical expert's report in rendering his opinion that plaintiff's injury was *not* caused by the collision.

In contrast, here, not only was Defendant's expert unable to reach such a conclusion (and, in fact, opined the opposite with respect to Plaintiff's cervical soft tissue injury), but Defendant's medical expert did not rely on the biomechanical studies in formulating his opinion that Plaintiff's surgical injury was not solely caused by the May 8, 1998 collision.[6]

The second reason the Court excluded Cripton's opinion is because Cripton's analysis was based on studies of normal spines, not spines already injured. Prior to the May 8, 1998 collision, Plaintiff injured her cervical spine and underwent disc surgery. Defendant conceded Plaintiff did not have a "normal" spine before the collision. The relevance and probative value of Cripton's opinion, therefore, was questionable. To permit such an opinion based on studies of *normal* spines would have resulted in juror confusion and unfair prejudice to Plaintiff.[7]

The Court excluded Cripton's opinion regarding causation of Plaintiff's injuries because not only was it based on studies of normal spines, but because Cripton is not a medical doctor and is therefore not qualified to render an opinion regarding the medical cause and degree of an injury.[8]

Admission of Cripton's opinions, in the absence of competent medical testimony, and because they were based on studies of normal spines, would have resulted in juror speculation, confusion and unfair prejudice to Plaintiff. Cripton's opinions were properly excluded pursuant to *Davis v. Maute*,[9] *Amalfitano v. Baker*,[10] and Delaware Rules of Evidence 401, 403 and 702.

1. Trial Transcript at 45 (Hereinafter "Trial Tr. at ____").

2. *See Davis v. Maute*, 770 A.2d 36, 38 (Del. 2001).

3. *Id.*

4. 794 A.2d 575 (Del.2001).

5. 2001 WL 209858, *1 (Del.Super.).

6. Trial Tr. at 44–45, 49.

7. Del. R. Evid. 403 and 401.

8. *See Kelly v. McHaddon*, 2002 WL 388120, *8 (Del.Super.).

9. 770 A.2d 36, 38 (Del.2001).

10. 794 A.2d 575 (Del.2001).

## 2. Exclusion of Evidence Regarding the Force Generated by the Collision

■■■ Defendant claims the Court erred by excluding any evidence of the damage (or lack thereof) to Plaintiff's or Defendant's vehicles. The Court disagrees. Defendant sought to introduce evidence concerning the lack of property damage in order to persuade the jury that Plaintiff could not have been injured by the impact or that her injuries were not as severe as she claimed. This is impermissible under Delaware law.[11] In her motion, and as noted above, Defendant overlooks the critical evidence she was required to offer under *Davis v. Maute* in order to make this type of evidence relevant and admissible. As the Court noted before trial and again during trial, Defendant failed to offer an opinion from a competent medical expert that would have made evidence of the force of impact relevant. Consequently, this evidence was properly excluded pursuant to the Supreme Court's holding in *Davis v. Maute.*[12]

## 3. Admission of Dr. Rudin's and Dr. Rosenfeld's Testimony

■■■ Defendant argues that the Court should have excluded the trial testimony of Dr. Rosenfeld and Dr. Rudin because of an alleged discovery violation by Plaintiff. Defendant claims Plaintiff failed to produce documents prepared by Dr. Bose, who treated Plaintiff for cervical disc injuries sustained in a prior accident. Specifically, Defendant points to a letter dated April 3, 1990, allegedly signed by Dr. Bose, addressed to Plaintiff's attorney. In this 1990 letter, Dr. Bose opined that Plaintiff "may" require surgery in the future. Defendant claims that if this letter had been produced by Plaintiff in a timely fashion in response to Defendant's properly served "First Set of Interrogatories and Request for Production," she would have used it to cross examine Dr. Rosenfeld and Dr. Rudin during their trial depositions.

Plaintiff's counsel claims that his file does not contain a set of interrogatories or request for production that required production of the Bose letter, nor does his file contain any correspondence informally requesting answers or responses to the set of interrogatories and requests for production Defendant claims she served. Moreover, Plaintiff's counsel points out his file does not contain a motion to compel answers or responses to this discovery. Plaintiff's counsel stated that he thought he produced the Bose letter before trial but indicated he could not provide documentation verifying this fact. Defense counsel claims she subpoenaed Dr. Bose's records pertaining to Plaintiff before trial but the documents provided pursuant to that subpoena did not include Dr. Bose's April 3, 1990 letter. Before Dr. Rosenfeld's and Dr. Rudin's trial depositions, Plaintiff's counsel told defense counsel she was welcome to review his complete medical file on Plaintiff. Defense counsel chose not do so until after the trial depositions of Dr. Rosenfeld and Dr. Rudin. Regardless of where the responsibility lies for the Defendant's late receipt of the Bose letter, the Court concludes that the Defendant was not unfairly prejudiced by its receipt.

First, over the Plaintiff's hearsay and other objections, the Court permitted defense counsel great latitude in questioning

---

**11.** *Davis v. Maute,* 770 A.2d 36 (Del.2001) ("...[C]ounsel may not argue that there is a correlation between the extent of the occupants personal injuries caused by the accident in the absence of expert testimony on the issue."); *Sloan v. Clemmons,* 2001 WL 1735087 (Del.Super.).

**12.** 770 A.2d 36 (Del.2001).

Dr. Townsend, Defendant's medical expert, on the contents of the Bose letter, and even allowed Dr. Townsend to read the letter to the jury. The Court advised defense counsel she was permitted to attack the bases for Plaintiff's experts' opinions by arguing to the jury that they may have testified differently if they had been provided with Dr. Bose's opinion regarding the possibility of future surgery. The Court also advised defense counsel she was permitted to review the contents of the Bose letter in her closing. The Court permitted this even though, as Plaintiff correctly points out, Dr. Bose's 1990 opinion as to the need for future surgery was not stated in terms of "reasonable medical probability." Thus, in an attempt to remedy Defendant's claim of prejudice, the Court allowed the jury to hear on more than one occasion a medical opinion that was otherwise inadmissible. Moreover, as Plaintiff points out, if Defendant had cross examined Dr. Rudin on this letter, it is clear Dr. Rudin would have opined that a second surgery is always a possibility after the type of single level cervical fusion previously performed by Dr. Bose.[13] If there was any prejudice to Defendant, it was caused, in part, by Defendant, and it was cured when the Court permitted Dr. Townsend to read the Bose letter and afforded defense counsel the latitude to discuss otherwise inadmissible evidence during her closing argument.

The Court properly denied Defendant's request for a curative instruction. Given the circumstances presented, it would have been legal error to instruct the jury to make an adverse inference against Plaintiff for Defendant's late receipt of the Bose letter.

### 4. Refusal to Give Instruction of "Failure to Provide Healthcare Provider Information"

■ Defendant asked the Court to give an instruction advising the jury they could make an adverse inference against Plaintiff for failing to produce key evidence. The record fails to support Defendant's contention that Plaintiff suppressed, much less intentionally suppressed, the existence of prior medical treatment to Plaintiff's cervical spine. Defendant fails to identify any medical providers whose identity Plaintiff allegedly concealed. An inability to remember with 100% certainty all medical treatment received 4–8 years ago does not constitute concealment of evidence. There is no merit to this argument. The Court's refusal to give the instruction was proper.

### 5. Granting of Directed Verdict as to Plaintiff's Soft Tissue Injury

■ Defendant claims that, although its own expert admitted that Plaintiff suffered a soft tissue injury in the collision, the Court erred by directing a verdict on this issue because "the jury was free to not accept the Plaintiff's ongoing subjective complaints" that formed one of the bases for Dr. Townsend's opinion. The Court's entry of a directed verdict on the soft tissue injury was proper under Delaware law in light of Plaintiff's experts' testimony, Dr. Townsend's testimony, and the undisputed post-accident objective findings.[14] Had the Court simply instructed the jury that the collision caused injury to the Plaintiff, the jury may have improperly concluded that they were required to find that the collision caused both the soft-tissue injury and the surgical injury. There were two separate and distinct injuries. The disputed injury was the surgical inju-

---

**13.** See Trial Dep. of Bruce Rudin, M.D., at 30–31.

**14.** See Amalfitano v. Baker, 794 A.2d 575 (Del. 2001).

ry. Defendant wants to ignore the undisputed objective findings of muscle spasm post-accident, and her own expert's testimony that Plaintiff suffered a permanent cervical soft tissue injury as a result of the collision. The experts' opinions that Plaintiff suffered a cervical soft tissue injury were based, in part, upon the objective finding of muscle spasms.[15] The Court's specific ruling as to the cervical soft tissue injury avoided potential juror confusion, clarified the issues for the jury to decide, and prevented the jury from reaching an improper conclusion on causation of the cervical soft tissue injury. The directed verdict was appropriate under *Amalfitano v. Baker.*[16]

### 6. *Exclusion of a Portion of Dr. Townsend's Testimony*

■ Defendant claims the Court erred in excluding Dr. Townsend's testimony that Plaintiff could have elected to have her pre-existing cervical disc injury surgically corrected in 1990, before the collision giving rise to the instant suit. The Court properly disallowed this opinion because Dr. Townsend did not state it to a reasonable degree of medical probability. Any purported prejudice caused by its exclusion was cured when the Court permitted Dr. Townsend to read Dr. Bose's April 3, 1990 letter and to offer his opinion that Plaintiff's cervical disc surgery after the 1998 collision was not *solely* related to the 1998 collision.

### 7. *Exclusion of Written Reports by Prior Treating and Examining Physicians*

■ Defendant's argument on this issue is without merit. All the reports and letters referenced by Defendant in her mo-

tion are inadmissible hearsay.[17] At trial, Defendant was unable to establish that any of the reports fell within an exception to the hearsay rule.[18] Defendant failed to call as witnesses any of the providers who authored or maintained these documents and therefore was unable to lay the foundation required for admission under Del. R. Evid. 803(4) or 803(6).

### 8. *Refusal to Excuse a Juror for Cause*

■ Defendant claims that she is entitled to a new trial or remittitur because the Court did not excuse for cause a juror who treated for approximately one year with Dr. Beneck, one of Plaintiff's medical experts. This argument is without merit. When questioned by the Court, the juror stated her contact with Dr. Beneck would not affect her ability to be fair and impartial. The Court was very satisfied after questioning the juror, and observing her demeanor during questioning, that the juror could be a fair and impartial fact finder. Defendant used a peremptory challenge to strike this juror in any event. The Court fails to see how its refusal to excuse the juror for cause mandates a new trial.

### 9. *The Court's Conduct and Statements*

■ Defense counsel alleges "a new trial is warranted in that the conduct and statements of the Trial Judge as reflected in the trial transcript constituted the appearance of prejudice against the Defendant at trial." Defense counsel fails to substantiate this claim with even one instance of such conduct or statement. Consequently, the Court is unable to analyze this argument.

**15.** *Id.* at 41, 42, 43; Trial Dep. of Karl Rosenfeld, M.D., at 15.

**16.** 794 A.2d 575 (Del.2001).

**17.** *See* Del. R. Evid. 801.

**18.** *See* Del. R. Evid. 803.

## 10. *The Amount of the Jury Verdict*

 The jury returned a verdict of $340,680.29. Defendant claims this award is excessive and "should be reduced given the Trial Court's unique perspective in the evaluation of witnesses and evidence present." When considering a motion for new trial under Rule 59, the Court is mindful that its power to grant a new trial is to be exercised cautiously with extreme deference to the findings of the jury.[19] The Court's function is "not to ascribe a motive or rationale for the verdict," rather, the Court "must simply determine if the jury returned a verdict which is contrary to the great weight of the evidence or if, by its verdict, the jury otherwise shocked the conscience of the Court."[20] The Court notes that Defendant offers no basis for her claim that the award is excessive other than the amount itself. Notably, during trial, Defendant failed to raise any credible issue about the motives of, or suggesting bias by, Plaintiff's expert witnesses that could have tainted their testimony about Plaintiff's condition, the independent and objective nature of their examinations and tests, or their ultimate conclusions that she suffered permanent injury as a result of the accident.[21] It is also noteworthy that Defendant does not claim that the jury failed to understand the nature of the case, the actual damages suffered, or the jury instructions given by the Court.[22] Consequently, the Court finds no reason to order a new trial or remittitur. The Delaware Supreme Court has made it clear that:

A verdict will not be disturbed as excessive unless it is so clear as to indicate that it was the result of passion, prejudice, partiality or corruption; or that it was manifestly the result of disregard of the evidence or applicable rules of law. A verdict should not be set aside unless it so grossly excessive as to shock the court's conscience and sense of justice; and unless the injustice of allowing the verdict to stand is clear.[23]

"[T]rials by jury implicate the most risky element of dispute resolution—uncertainty."[24] Defense counsel chose to employ a risky trial strategy when she attacked Plaintiff's credibility on multiple occasions. This tactic backfired. Plaintiff was a pleasant, likeable, single, working mother. Her credibility was bolstered not only by her demeanor on the witness stand, but by the testimony of the physician who conducted a medical exam at the request of Plaintiff's No Fault carrier:

Q: Doctor, in your report, did you specifically note that the history that Ms. Rizzi gave to you was consistent with the records that your reviewed?

A: Yes.

Q: Why did you make a specific note of that in your report?

A: Because sometimes the facts are not what the person who is being interviewed portrays. So it's nice to know that what the patient or person is telling you is real, consistent and makes the period that you spent evaluating them, at least in my mind, more meaningful. You don't have to worry about are they withholding things, are they lying or are they making things up. So that's why I noted that.

\* \* \*

**19.** *Maier v. Santucci,* 697 A.2d 747, 749 (Del. Supr.1997) (citation omitted).

**20.** *Dunkle v. Prettyman,* 2002 WL 833375, \*2 (Del.Super.).

**21.** *See Amalfitano v. Baker,* 794 A.2d 575, 578 (Del.2001).

**22.** *See Stallsworth v. K Mart Corp.,* 1988 WL 139898, \*4 (Del.Super.).

**23.** *See Stallsworth v. K–Mart Corp.,* 1998 WL 139898, \*1 (Del.Super.) (citations omitted).

**24.** *Dunkle v. Prettyman,* 2002 WL 833375, \*3 (Del.Super.).

I found Mrs. Rizzi refreshing in the sense that she in no way embellished or magnified her symptoms. I found her direct, straightforward and it was important for me to note that . . . [25]

The verdict is not against the great weight of the evidence. The evidence established that the Plaintiff suffers constant pain. As a result of this accident, she became depressed and despondent. Her profession, hair styling, requires extensive, repetitive use of her arms which causes unrelenting pain in her neck. The evidence further established that Plaintiff continues to work despite the pain to support herself and her child, and that she will suffer pain and have physical limitations for the rest of her life. The evidence established that as a proximate result of the May 8, 1998 accident, she was required to undergo a surgical procedure which left her with a three-level cervical fusion. The evidence established she is more suscepti-ble to future injury and her condition will likely worsen as she ages. The evidence also established that Plaintiff incurred medical expenses in the amount of $40,680.29 after the expiration of No Fault benefits. Plaintiff's experts were very effective in describing her injuries in a way that enabled the jury to understand their cause and their impact. Plaintiff's testimony about the effect the injuries she sustained in the May 8, 1998 collision was credible and compelling. In sum, the verdict is not against the great weight of the evidence and does not shock the Court's conscience. The Court will not disturb it.

\* \* \*

For the reasons stated above, Defendant's motion is **DENIED.**

IT IS SO ORDERED.

---

25. Trial Dep. of Karl Rosenfeld, M.D., at 19– 20.