Judith MASON, Defendant
Below, Appellant,

v.

Maria RIZZI, Plaintiff
Below, Appellee.

No. 339, 2002.

Supreme Court of Delaware.

Submitted: Aug. 5, 2003.
Decided: March 3, 2004.

Louis J. Rizzo, Jr. (argued) and Cynthia G. Beam of Reger & Rizzo, Wilmington, Delaware, for appellant.

Kenneth M. Roseman of Ciconte, Roseman & Wasserman, Wilmington, Delaware, for appellee.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, constituting the court en banc.

STEELE, Justice:

In this appeal, consolidated with *Eskin v. Carden,* 842 A.2d 1222 (Del.Supr.2004), we again address the nature and scope of the admissibility of biomechanical expert testimony related to a motor vehicle accident alleged to have caused personal injuries to a particular plaintiff.[1] We also review the trial judge's decision to enter a partial judgment as a matter of law[2] on the question of whether the accident caused a "soft-tissue" injury, as well as the trial judge's discretionary ruling to allow Plaintiff/Appellee's medical experts

---

1. Although this case was originally consolidated with *Eskin,* we decided them separately. We note, however, the importance of reading these cases together in order to understand the complex evidentiary subject of biomechanical expert testimony.

2. Although Plaintiff styled her Motion as one for a "directed verdict," the trial judge tracked the language of Superior Court Civ. R. 50 and entered "judgment as a matter of law." We recognize the long-standing practice of styling a motion under these circumstances as one "For a Directed Verdict."

to testify by pretrial video deposition despite Plaintiff/Appellee's counsel's alleged failure to disclose during pre-deposition discovery an expert's letter suggesting permanent injury arising from an earlier accident.

We find that the trial judge did not abuse her discretion, either when she barred the biomechanical expert testimony nor when she allowed Plaintiff/Appellee's medical experts to testify. We, therefore, affirm her rulings on the proffered evidence. We further find that the record supports her conclusion that there was no genuine issue of material fact regarding the existence or cause of a soft-tissue injury, even when the evidence is examined in the light most favorable to the Defendant/Appellant. Therefore, the trial judge correctly removed this issue from among those to be considered by the jury. Accordingly, we affirm the judgment of the Superior Court.

### I.

On May 8, 1998, Defendant/Appellant Judith Mason rear-ended Plaintiff/Appellee Maria Rizzi's car. The accident occurred while both were stopped at a red light and Mason's foot came off the brake pedal. There was no damage to either vehicle.

At the time of the accident, Rizzi had a pre-existing medical condition dating back to 1990 that included a disc herniation and degenerative changes to her cervical spine. In April 2001, almost three years after the accident, Dr. Bruce Rudin operated on Rizzi's spine.

Rizzi brought suit, and the trial took place beginning on March 11, 2002. Mason admitted liability before trial, leaving the issues of proximate cause and damages for the jury at trial. Rizzi claimed two types of injury—a soft-tissue injury to her neck and back evidenced by pain and muscle spasm, and pain associated with trauma requiring surgery on her spine in 2001. On March 13, 2002 the jury returned a verdict in favor of Rizzi in the amount of $340,680.29. Mason filed an unsuccessful Motion for a New Trial or Remittitur, and now appeals the trial judge's evidentiary rulings and denial of a new trial.

### II.

**The Trial Judge correctly granted Rizzi's Motion *In Limine* to Exclude Mason's Biomechanical Expert Testimony.**

Before trial, Rizzi moved to exclude Mason's proffered biomechanical expert testimony. Mason's expert would have testified that:

1. Based upon the scientific analysis outlined above, the loads placed on Ms. Rizzi's cervical and lumbar spine, during the incident of May 8, 1998, were comparable to or less than the loads her spine experienced during everyday activities.

2. The loads placed on Ms. Rizzi's spine were significantly less than the loads required to produce permanent injury to the structures of the spine, as documented in the biomechanical literature.

The trial judge excluded the testimony at trial and then expanded upon her bases for doing so in her Post-trial Memorandum Opinion.[3] She reasoned that while the force of impact in the accident may have been no more than "everyday" forces from normal activities, the amount of force involved in the accident was never put in issue by any expert qualified to render an opinion on "medical causation." Dr. Townsend, a physician expert retained by Mason, did not opine that "everyday forces"

---

**3.** *Rizzi v. Mason,* 799 A.2d 1178 (Del.Super.Ct.2002).

could *not* have caused Plaintiff Rizzi's injuries. Dr. Townsend offered "no opinion on the amount of force, or lack of force," required to cause Rizzi's injuries. Dr. Townsend "did not rely on the biomechanical expert's opinion in any way in forming his medical causation opinion." Mason argued just before the trial judge's evidentiary ruling and at the time of consideration of a post-trial Motion for a New Trial or Remittitur, and now on appeal, continues to argue, that the biomechanical expert's two-pronged opinion has relevance, and therefore evidentiary significance, independent of any expert opinion on "medical causation." Mason's biomechanical expert-independent of Mason's medical expert's opinion and contrary to the opinion of Rizzi's medical expert—would have testified that the impact "generated so little force" that Rizzi's injuries could not have been as severe as she claimed, and that "she could have received the same injuries performing daily activities." Mason would then have argued that the jury could reasonably rely upon the opinion that the forces at work in the accident were no more "load" generating than, e.g., sealing an envelope or peeling an apple. The biomechanical expert's opinion, however, did not elaborate on what *he* meant by every day activities or compare Rizzi's spine to the normal or average spine. The biomechanical expert proffered no validated rate of error in the methodology for determining the effect of the loads even on the average person. The proffered opinion did not suggest that the expert had considered the effect of the "loads" on a spine, like Rizzi's, which had degenerative weakness and had been subjected to surgery before this accident.

Accordingly, the trial judge identified two reasons that supported her decision to exclude the biomechanical expert's testimony:

(1) The proffered testimony was "irrelevant, highly prejudicial and should be excluded" because Defendant's *medical* expert did not testify about the forces involved in the accident and whether they could or could not have caused injuries as severe as those allegedly suffered by Rizzi;

(2) Defendant's *biomechanical* expert proffered an opinion based on studies that analyzed the effect of impact forces on normal spines, not on previously injured spines, like Rizzi's. That factor alone, the trial judge concluded, would result in juror confusion, *even if* the proffer had some "relevance and probative value." The trial judge explained:

> Admission of Cripton's opinions, in the absence of competent medical testimony, and because they were based on studies of normal spines, would have resulted in juror speculation, confusion and unfair prejudice to Plaintiff. Cripton's opinions were properly excluded pursuant to *Davis v. Maute, Amalfitano v. Baker,* and Delaware Rules of Evidence 401, 403 and 702.[4]

The trial judge's reasoning and ruling gives us an opportunity to elaborate further our views on biomechanical expert opinion discussed in the companion case of *Eskin v. Carden.*[5]

First, where there is an objection, we reaffirm the necessity for our trial judges to examine carefully the purpose for which a biomechanical expert opinion is offered in a particular case. Like many difficult issues in the law, the question of whether biomechanical expert testimony should be admitted is highly contextual. As we stat-

---

4. 799 A.2d at 1182.

5. *Eskin v. Carden,* 842 A.2d 1222 (Del. Supr. 2004).

ed in *Eskin,* we recognize the existence of the biomechanical field and that most, if not all proffered experts in that field will be qualified to opine reliably in specific situations or contexts. When those opinions are relevant and directly address particular facts in issue and the studies that support them establish their reliability, a trial judge may find them helpful to a jury.

In this context, we reject the notion, suggested by the term "medical causation," that biomechanical expert opinion can never be admitted unless the opinion is seconded by or relied upon by a physician in forming that physician's opinion about whether an accident caused physical injury to a person. There may well be circumstances where a biomechanical expert's views will be both relevant and reliable. For example, a patient tells a physician: "My head struck the dash during the accident." The physician concludes that the statement, in part, confirms the existence of or helps explain the severity of the patient's head injury. A trial judge might find relevant and reliable a biomechanical expert's view that no person meeting the plaintiff's physical description could have struck the dash with his or her head, given the forces generated by the accident. The biomechanical expert's opinion, thus, may reliably establish the improbability of a factual assumption upon which a medical doctor relied in order to form an opinion about the causation or severity of an injury. The biomechanical expert opinion would be relevant because it contradicts an essential fact actually relied upon by a medical expert accepting the credibility of a patient's oral history.

The trial judge would, of course, in determining the reliability of the opinion, consider the error rate of the supporting tests. If the statistical margin of error was within reason, the trial judge could allow the testimony because its trustwor-thiness had been established through validated testing, and the particular issue on which it had a bearing could be focused in a way unlikely to mislead or confuse the jury. The opinion could aid the jury in determining whether it was more likely than not that the plaintiffs head *could have* struck the dash given the forces at work in the accident. If believed, the expert's opinion would address whether the jury should rely upon the physician's expert opinion which was based, in part, on the assumption that the plaintiff's head did strike the dash. No juror would be in danger of drawing an inference beyond the reliable limits of the purpose for which the opinion was offered—namely, that this person did fit into a measurable category of average persons reflected in the biomechanical testing reported in "the literature." Based on such expert testimony, the jury could reasonably conclude that the plaintiff's head probably did not, just like the average person's probably would not, strike the dash.

There also can be little doubt that a case will arise where no medical history or contemporaneous examination reveals a plaintiff's unique susceptibility to injury. Medical history, under these circumstances, would have no bearing upon the biomechanical expert opinion's reliability, provided that a reasonable margin of error in testing average people had been established. The plaintiff would fit into a statistically measurable category. The trial judge could accept studies with error rates within an acceptable marginal range and conclude that they validate the reliability of the opinion, since it applies to persons having the same general characteristics as the plaintiff. Since the opinion would be clearly relevant under these circumstances, no rational 403 analysis would likely result in a conclusion that the jury would be misled or confused about the

significance of the testimony or its application to the individual plaintiff.

Second, to conclude that the trial judge's role as the gatekeeper for scientific or technical expert opinion testimony is fulfilled by concluding, without more, that an individual who is properly credentialed in a recognized field of expertise will present a reliable expert opinion, is entirely too facile. The U.S. Circuit Court for the Third Circuit has highlighted an equally important inquiry:

> An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.[6]

Before cross-examination attacks the persuasiveness of expert opinion, the trial judge is obliged to satisfy herself that the expert opinion testimony is relevant, reliable, validated, and, therefore, trustworthy. Then, and only then, can it be juxtaposed against other relevant, reliable, validated, trustworthy expert opinion for the purpose of the parties contesting, and then the jury evaluating, its persuasiveness.

The current controversy over biomechanical expertise and its relationship to medical expertise tends to blur the focus upon the trial-judge-as-gatekeeper. In an appropriate case, expertise in each field might assist the jury in resolving a fact in controversy by allowing the jury to weigh what the expertise of each field brings to the table in the form of a trustworthy opinion. The opinion of neither field is necessarily dependent upon the other. The essential inquiry, given the particular facts of the case, should be whether the expert opinion is sufficiently reliable, as well as relevant, so that the trial judge can fairly conclude that it is trustworthy. Will the opinion actually assist the trier of fact in fairly resolving the underlying factual dispute, or will it confuse the issue by shifting the fact finders' attention from the particular to the universal?[7] That is, will the fact finder be confused about the expert opinion's application to the specifics of the case at hand?

■ Here, as in *Eskin,* we again confront biomechanical expert opinion that does not reliably support its proponent's argument. Absent a showing that the biomechanical literature demonstrated its applicability to a person with Rizzi's medical history, the proffer failed to establish the: ... "[an]other aspect of relevancy ... whether [it] is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[8] The biomechanical expert's two-pronged opinion[9] was that the accident caused "loads" on Rizzi's spine comparable to or less than what Rizzi would confront in "every day activities," and that those loads were "significantly less" than the loads required to produce "permanent injury to the structures of the spine, as documented by the biomechanical literature." The factual dispute still remaining for the jury was

6. *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir.1985).

7. "While science attempts to discover the universals hiding among the particulars, trial courts attempt to discover the particulars hiding among the universals ..." *See Eskin v. Carden,* 842 A.2d 1222 (Del.Supr.2004) *quoting* David Faigman, *Legal Alchemy: The Use and Misuse of Science in the Law* 69 (1999).

8. *Downing,* 753 F.2d at 1242.

9. Based upon the wording of the opinions of the biomechanical experts in *Eskin* and this case, it is apparent that the "field" has standardized its experts' opinions.

whether the accident caused physical pain and Rizzi's ultimate disc surgery following the accident—not whether the accident could reasonably have caused these results to the average person who had not experienced pre-existing spinal surgery and significant degenerative changes to her spine. It would have been inappropriate and unhelpful, we think, for the biomechanical expert's views about the effects of forces of impact upon people generally to be used as a basis to bootstrap a more particularized opinion that the "loads" from those forces "were significantly less than the loads required to produce permanent injury to the structures of [Rizzi's] spine," specifically.

The trial judge correctly concluded that the biomechanical expert's supporting studies failed to account for the effect of the forces at impact on a spine which had earlier undergone disc surgery. Allowing the jury to consider the biomechanical expert's generalized opinion could easily have misled the jurors to believe that this "one-size-fits-all" biomechanical expert opinion could be relied upon to assist them in a fair and objective consideration of the cause or severity of the injury to Rizzi. In this case, the proffered biomechanical expert testimony would have misled the jury or confused the issues they were being asked to resolve.

 In summary, just as *Davis v. Maute*[10] does not *per se* bar the admission of photographs of the vehicles involved in an accident, biomechanical expert testimo-ny is not *verboten* simply because it is, by its nature, generalized. In a particular case, there may well be circumstances where biomechanical expertise based upon reliable and validated studies may assist the finder of fact in determining the existence or nonexistence of a fact crucial to resolving an issue, without presenting any danger of generalized conclusions that could misdirect the finder of fact from the appropriate inquiry. This is not such a case.

## III.

### The Trial Judge Correctly Granted Partial Judgment as a Matter of Law.

 Mason further contends that the trial judge erred by granting partial judgment as a matter of law, thereby removing from the jury the issue of whether the accident caused Rizzi's soft-tissue injury. We review entry of judgment as a matter of law to determine whether the evidence and all reasonable inferences drawn therefrom raise an issue of material fact when viewed in a light most favorable to the party against whom the judgment is entered.[11] When undisputed facts compel only one conclusion, the trial judge has a clear duty to enter a judgment consistent with that conclusion, thereby removing it from the province of the jury.[12]

After the close of her case-in-chief, Plaintiff moved for a Directed Verdict under Superior Court Rule 50(a).[13] The

---

10. 770 A.2d 36 (Del.2002).

11. *Fritz v. Yeager*, 790 A.2d 469 (Del.2002).

12. *McNally v. Eckman*, 466 A.2d 363 (Del. 1983); *Keller v. Farmers Bank of Delaware*, 24 A.2d 539, 543 (Del.Super.Ct.1942).

13. Del.Super. Ct. R. Civ. P. 50(a) Judgment as a matter of law.

 (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the Court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

 (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall

Plaintiff contended that she had presented undisputed evidence that the May 1998 accident caused both pain *and* "surgical injuries" (injuries that later required Plaintiff to undergo back surgery.) [14] The trial judge deferred ruling on the motion until after the defense presented its case. At the prayer conference in the trial judge's chambers, she readdressed the motion and granted it in part and denied it in part, ruling:

> Given Dr. Townsend's testimony, I'm going to rule as a matter of law that causation has been established with respect to the soft-tissue injury to the neck and back. So, I will instruct the jury that that is no longer an issue for them to consider, that the only issue to consider with respect to the soft-tissue injury . . . is the amount of damages . . .
>
> I'm not going to grant your motion with respect to the surgery because I think under Rule 50(a), a reasonable jury, even in light of Dr. Townsend's testimony that the accident was a proximate cause of surgery, he made it clear in his deposition that he bases his opinion on her subjective complaints and that if you believe those, then his opinion of causation follows. So a reasonable jury could, it's conceivable, disregard her subjective complaints and reach a different conclusion.
>
> So, I think the safer ground is to deny your motion on the causation on the

surgery and leave that for the jury to decide. [15]

■ The record confirms the trial judge's conclusion that the record supports no inference other than the conclusion that the accident caused Rizzi's soft-tissue injuries. Despite the general deference of our courts to the findings of a jury, this Court has held that a jury, as a matter of law, must find some quantum of damages where uncontradicted medical testimony establishes a causal link between an accident and the injuries sustained. [16]

Mason suggests that the trial judge improperly relied on *Amalfitano v. Baker* [17] to support her ruling because of the "absence of any objective findings by Dr. Townsend, Dr. Rosenfeld and Dr. Bose, or by Plaintiff's expert and treating physician." Further, Mason insists in her brief that, "Dr. Townsend stated quite clearly that there were no objective findings of injury to Ms. Rizzi from the May 1998 accident." We find these statements in Appellant's brief troublingly inaccurate. The Court has independently scrutinized the record, and found at least two instances where Mason's own expert, Dr. Townsend, explicitly acknowledged objective findings supporting soft-tissue injuries to the Plaintiff resulting from the accident:

> Q: (by Mr. Roseman) Was she examined by a doctor, during her presentation at the emergency room?
>
> A: (by Dr. Townsend) Yes.

specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

**14.** See Pl. Motion For Directed Verdict C.A. No. 99C–09–271 (March 12, 2002). While the motion does not explicitly refer to "soft-tissue injuries" as distinct from "pain and surgical injuries," reasonable people could differ on whether the motion asked for a directed verdict on all her complaints or just those related to the surgery.

**15.** Trial Transcript at 91, 92 (March 12, 2002).

**16.** *See Amalfitano v. Baker,* 794 A.2d 575 (Del. 2001); *Maier v. Santucci,* 697 A.2d 747, 749 (Del. 1997).

**17.** *Id.*

Q: Did that doctor note the presence of muscle spasm in her neck and low back on examination?

A: Yes.

Q: Is muscle spasm considered to be an objective indication of injury?

A: Yes.

. . .

Q: Do you have any reason to disagree with the emergency room doctor's findings and conclusions?

A: Not at all.[18]

\* \* \*

Q: (by Mr. Roseman) After you reviewed all of the medical records provided to you by Ms. Beam, did you, then, conduct an examination of Ms. Rizzi?

A: (by Dr. Townsend) Actually, I—I examined her first and looked at the records later.

. . .

Q: Doctor, do you agree that it was your conclusion that Ms. Rizzi did suffer an injury as a result of the motor vehicle collision of May 8th, 1998?

A: Yes.

Q: Do you agree that one of the injuries that Ms. Rizzi suffered as a result of that motor vehicle collision is what I've heard you refer to before as a soft-tissue injury?

A: That's correct.

Q: And that would be an injury to the muscles and ligaments of both the cervical spine and the lumbosacral spine?

A: That's correct.[19]

Accordingly, Mason's argument finds no support in the record and is patently without merit.

Finally, we address Mason's contention that the trial judge's ruling was improper because Plaintiff's motion sought *only* a ruling on the issue of the causation of the *surgical injury*. Our reading of the motion does not support that assertion. The trial judge properly understood that the parties were disputing two separate and distinct injuries. After the close of Mason's case, it became clear that the only injury genuinely disputed was that which led to the subsequent back surgery. The trial judge correctly noted that: "Had the Court simply instructed the jury that the collision caused injury to the Plaintiff, the jury may have improperly concluded that they were required to find that the collision caused both the soft-tissue injury and the surgical injury."[20] Mason's brief characterizes the partial ruling in Rizzi's favor as an "alternative argument," insinuating that the trial judge made that argument *for* Rizzi because it had not, in Mason's counsel's view, been raised by Rizzi's counsel. Although Rizzi's Motion for a Directed Verdict does not explicitly request two distinct rulings, two injuries were clearly in dispute at the time of the Motion.

Here, uncontradicted medical evidence confirmed objective findings supporting Rizzi's soft-tissue injuries. Mason's own medical expert concluded that the accident caused Rizzi's soft-tissue injuries. The trial judge correctly ruled that even when viewed in a light most favorable to Mason, the evidence and all reasonable inferences drawn from it raised no genuine issue of material fact regarding the existence and cause of Plaintiff's soft-tissue injury.

Our system of justice relies on trial judges to fashion careful and thorough legal rulings that take into account both the complicated nature of personal injury dis-

18. Trial Dep. of John B. Townsend, M.D., at 40, 41 (March 7, 2002).

19. *Id.* at 49, 50.

20. *Rizzi,* 799 A.2d at 1184.

putes, and the often intricate manner in which a jury must be instructed regarding those disputes. We reject the veiled suggestion that the trial judge's ruling was somehow an act of rogue judicial advocacy on behalf of the Plaintiff. We remind counsel that when the record is available to us, we do review it carefully. We caution counsel not to make unsubstantiated characterizations of trial judges' rulings that are unsupported by even the most liberal inference from the record.

## IV.

### The Trial Judge Fashioned a Legally Correct and Fair Resolution of the Pre-Trial Discovery Deficiency.

■ Mason lastly argues that the trial judge erred by denying a Motion *in limine* that sought to exclude the expert testimony of Drs. Rosenfeld and Rudin. Alternatively, Mason claims the trial judge erred by not granting a requested curative jury instruction.

Specifically, Mason contends that a letter dated April 3, 1990, addressed to Plaintiff's attorney, and allegedly signed by a Dr. Bose, was not produced in a timely fashion in response to properly served interrogatories. Dr. Bose, who performed Rizzi's pre-accident back surgery, opines in that letter that Rizzi "may" require future surgery. Mason claims that she was unfairly prejudiced when Rizzi's counsel failed to produce the letter before the trial so that it could be used to cross-examine Drs. Rosenfeld and Rudin's in their trial depositions. Mason insists that the Court should have excluded the trial deposition testimony of Dr. Rosenfeld and Dr. Rudin altogether because of this alleged discovery violation. Alternatively, Mason believes that the discovery violation could have been appropriately addressed by an instruction advising the jury that they could draw an adverse inference against Rizzi for failing to present critical evidence that raised a question about whether the accident itself necessitated her 2001 surgery or whether Rizzi would have needed the surgery in any event for reasons unrelated to the accident.

We review a trial judge's refusal to bar evidence or to provide a curative instruction for abuse of discretion.[21]

The trial judge found no evidence to support a conclusion that Rizzi's counsel intentionally misled Mason's counsel by failing to produce the Bose letter before the trial depositions of Rizzi's medical experts. The trial judge set forth a lengthy explanation of the discovery "deficiency":

> Plaintiff's counsel claims that his file does not contain a set of interrogatories or request for production that required production of the Bose letter, nor does his file contain any correspondence informally requesting answers or responses to the set of interrogatories and requests for production Defendant claims she served. Moreover, Plaintiff's counsel points out his file does not contain a motion to compel answers or responses to this discovery. Plaintiff's counsel stated that he thought he produced the Bose letter before trial but indicated he could not provide documentation verifying this fact. Defense counsel claims she subpoenaed Dr. Bose's records pertaining to Plaintiff before trial but the documents provided pursuant to that subpoena did not include Dr. Bose's April 3, 1990 letter. Before Dr. Rosenfeld's and Dr. Rudin's trial depositions, Plaintiff's counsel told defense counsel she was welcome to review his complete medical file on Plaintiff. Defense counsel chose not do so until after the trial

21. *DeAngelis v. Harrison*, 628 A.2d 77 (Del. 1993).

depositions of Dr. Rosenfeld and Dr. Rudin.[22]

As found by the trial judge, Mason could have cured any prejudice caused by Rizzi's counsel's failure to find and forward the Bose letter before the trial depositions of Drs. Rosenfeld and Rudin, by taking the opportunity to review Rizzi's counsel's complete medical file before those depositions.

To grant Mason's Motion *in limine*, which sought to exclude altogether the expert testimony of Drs. Rosenfeld and Rudin, would have been an extreme, and therefore, unlikely remedy in any event. The trial judge attempted, quite properly, to weigh the harm to both parties. She mitigated any prejudice Mason may have suffered at trial because of the late receipt of the Bose letter, as follows:

> First, over the Plaintiff's hearsay and other objections, the Court permitted defense counsel great latitude in questioning Dr. Townsend, Defendant's medical expert, on the contents of the Bose letter, and even allowed Dr. Townsend to read the letter to the jury. The Court advised defense counsel she was permitted to attack the bases for Plaintiff's experts' opinions by arguing to the jury that they may have testified differently if they had been provided with Dr. Bose's opinion regarding the possibility of future surgery. The Court also advised defense counsel she was permitted to review the contents of the Bose letter in her closing. The Court permitted this even though, as Plaintiff correctly points out, Dr. Bose's 1990 opinion as to the need for future surgery was not stated in terms of "reasonable medical probability." Thus, in an attempt to remedy Defendant's claim of prejudice, the Court allowed the jury to hear on

more than one occasion a medical opinion that was otherwise inadmissible.[23]

Thus, the trial judge's remedy was to give Mason her "best shot" at maximizing the impact of the Bose statement without the risk that Drs. Rosenfeld and Rudin may have discredited Mason's interpretation of the Bose letter had they been confronted with it. Given that remedy, we conclude that Mason was not unfairly prejudiced by not having the Bose letter available to her at the time of the trial depositions. Accordingly, the trial judge acted appropriately within her discretion in denying the motion *in limine*.

Finally, because there is no support in the record for the contention that Plaintiff's counsel intentionally ignored Mason's discovery requests, the trial judge acted appropriately within her discretion by denying the requested curative instruction.

### V.

For the foregoing reasons, the judgment of the Superior Court is Affirmed.