**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

APR 4 2017

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ADELA RAMIREZ; VALLARTA FOOD ENTERPRISES, INC., | No.    15-55516 |
| Plaintiffs-Appellants, | D.C. No. 2:12-cv-10023-AB-AGR |
| v. | |
| ITW FOOD EQUIPMENT GROUP, LLC, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted March 10, 2017
Pasadena, California

Before:  TASHIMA and NGUYEN, Circuit Judges, and MARBLEY,[**] District Judge.

Adela Ramirez and her employer, Vallarta Food Enterprises, Inc.

(collectively, "Appellants") appeal the grant of summary judgment on their

products liability claim arising from Ramirez's hand being yanked into the moving

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

blade of a meat grinder manufactured by Appellee ITW Food Equipment Group, LLC ("ITW"). Appellants also appeal the grant of ITW's motions in limine excluding testimony and opinions of Appellants' experts. We have jurisdiction under 28 U.S.C. § 1291. We reverse.

## I. The design defect claim

Appellants focus on two defects: (1) a lack of an automatic shutoff mechanism that stops the grinder's blade from spinning if the lid is opened; and (2) a lack of a lock preventing the lid from opening while the grinder's blade is spinning. We address each in turn.

### A. The automatic shutoff theory raises a manufacturing defect claim rather than a design defect claim

Appellants do not dispute that the grinder's "lid is designed to cut power when the lid is open," but contend that it failed to do so on the day of the accident. Thus, despite being styled as a design defect claim, the automatic shutoff theory raises only a manufacturing defect claim. This claim fails because Appellants do not contend that the lid "differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Garrett v. Howmedica Osteonics Corp.*, 153 Cal. Rptr. 3d 693, 706 (Ct. App. 2013).[1] Therefore, the

---

[1] This holding does not foreclose on remand evidence that the grinder failed to operate on the day of the accident as intended or designed.

2

district court was correct to reject Appellants' automatic shutoff theory as a basis for a design defect claim.

We now proceed to analyze Appellants' design defect claim only under their lid lock theory.

## B. The consumer-expectations test applies to the lack of a lid lock design defect claim

The consumer-expectations and risk-benefit tests "provide alternative means for a plaintiff to prove design defect and do not serve as defenses to one another," meaning that Appellants can succeed under one test even if they fail under another. *Chavez v. Glock, Inc.*, 144 Cal. Rptr. 3d 326, 343 (Ct. App. 2012).

Contrary to ITW's argument, the consumer-expectations test is "entirely appropriate" for design defect claims based on even "complex machinery" used by employees in commercial settings. *Akers v. Kelley Co.*, 219 Cal. Rptr. 513, 519–24 (Ct. App. 1985) *disapproved on other grounds by People v. Nesler*, 941 P.2d 87 (Cal. 1997); *Saller v. Crown Cork & Seal Co.*, 115 Cal. Rptr. 3d 151, 164–65 (Ct. App. 2010) (consumer-expectations test applied to design defect claim by worker exposed to the asbestos insulation when cleaning refineries).

The district court concluded that the consumer-expectations test does not apply because Appellants' theory is too technically complex, as shown by their reliance on expert testimony to oppose summary judgment. But the purpose of that

expert testimony was to rebut ITW's *defenses* of unforeseeable misuse or lack of feasible, safer designs. While Appellants' expert testimony strengthens their design defect claim, their prima facie case need not turn on such testimony. ITW analogizes Appellants' theory to the chemical interaction between skin and latex invoked in *Morson v. Superior Court*, 109 Cal. Rptr. 2d 343, 357–59 (Ct. App. 2001) or the virtual Rube Goldberg machine relied upon by the plaintiff in *Soule v. General Motors Corp.*, 882 P.2d 298, 310 (Cal. 1994). Unlike in those cases, Appellants' prima facie case does not turn on an understanding of how "several obscure components" of the grinder work. *Id.*

## C. ITW failed to meet its summary judgment burden under both tests

Under both the consumer-expectations and risk-benefit test, a plaintiff must prove that the product's design was a "substantial factor in causing his injury." *Chavez*, 144 Cal. Rptr. 3d at 345; *compare* Judicial Council of California Civil Jury Instruction ("CACI") No. 1203 *with* CACI No. 1204. This standard requires "only that the contribution of the individual cause be more than negligible or theoretical." *Colombo v. BRP US Inc.*, 179 Cal. Rptr. 3d 580, 592 (Ct. App. 2014). Appellants "need not establish that a defendant's product was the sole potential proximate cause of injury," *id.*, nor are they "required to disprove every possible alternative explanation of the injury." *Campbell v. Gen. Motors Corp.*, 649 P.2d 224, 229 (Cal. 1982).

4

Ramirez's testimony established causation under both tests. In opposing summary judgment, Appellants offered Ramirez's testimony that her hand was "yanked" into the grinder's moving blades after she opened the lid. This testimony is sufficient to establish causation. *See Saller*, 115 Cal. Rptr. 3d at 156–57, 164–65 (worker's testimony about his work in refineries, use of asbestos insulation, and dust in the air was sufficient under consumer-expectations test to prove design defect claim based on exposure to asbestos); *Campbell*, 649 P.2d at 227, 231–33 (plaintiff's testimony that she was thrown to bus's floor, as well as photos of the bus, were "sufficient evidence" to make out a "prima facie case" under both consumer-expectations and risk-benefit test on design defect claim based on absence of a grab bar). The cases cited by ITW do not suggest otherwise, as they involved complex theories of causation that turned on scientific expertise, *see Stephen v. Ford Motor Co.*, 37 Cal. Rptr. 3d 9, 15 n.6, 17 (Ct. App. 2005), or provide no analysis of the California substantive law that controls here, *see Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998).

ITW argues that Appellants cannot prove causation absent evidence that their proposed safety devices were feasible and would have prevented the accident. But the feasibility of alternative safety devices is irrelevant under the consumer-expectations test and, under the risk-benefit test, the *defendant* bears the burden to prove the lack of feasible safety devices. *Chavez*, 144 Cal. Rptr. 3d at 343. A

5

plaintiff need not prove that the absent safety "device would have prevented the accident," because such a rule might "enable the manufacturer to prevail on the basis of its failure to provide the safeguard," contrary to "the major policy goals of strict liability." *Campbell*, 649 P.2d at 229.

Accordingly, ITW failed to meet its burden, as the party moving for summary judgment, to show that Appellants cannot prove the lack of a locking lid was a substantial factor in causing Ramirez's injury.

Under the risk-benefit test, once Appellants establish causation, "the burden shifts to [ITW] to establish that the benefits of the challenged design, when balanced against such factors as the feasibility and cost of alternative designs, outweigh its inherent risk of harm." *Chavez*, 144 Cal. Rptr. 3d at 343. ITW failed to meet this burden, and thus it was error to grant summary judgment on Appellants' design defect claim under the risk-benefit test.

As for the consumer-expectations test, in addition to causation, the plaintiff must show that the product "failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Campbell*, 649 P.2d at 227. The quantum of evidence needed to make out a prima facie case under this test is "quite low." *Chavez*, 144 Cal. Rptr. 3d at 349–50.

The district court concluded that Appellants "offered no evidence" that the grinder "failed to perform as safely as an ordinary consumer would expect." But

6

Ramirez testified that her hand was yanked into the grinder when she opened the lid, which is "sufficient" under the consumer-expectations test. *Saller*, 115 Cal. Rptr. 3d at 156–57, 164–65; *Campbell*, 649 P.2d at 227, 231–33. ITW's decision to put the grinder on the market is an implied representation "that it [will] safely do the jobs for which it was built." *Soule*, 882 P.2d at 304 (quotation omitted). Here, the implied representation is that the grinder will safely grind meat. And the fact that Ramirez lifted the lid while the grinder was operating does not defeat her case given that she was using the grinder in a reasonably foreseeable manner. In fact, ITW engineer Brian Bader conceded that Ramirez's lifting of the lid while the grinder was operating was a "foreseeable misuse." A manufacturer is liable under the consumer-expectations test for harm arising from "misuse and abuse of his product, either by the user or by third parties" that is foreseeable. *Chavez*, 144 Cal. Rptr. 3d at 347.

Because ITW failed to meet its burden, it was error to grant summary judgment on Appellants' design defect claim under the consumer-expectations test.

**D. ITW failed to meet its burden on its affirmative defenses**

The district court erred in finding that ITW met its burden on its affirmative defenses that actions by Ramirez, her employer, or third parties were the causes of her injury. "[P]roduct misuse [i]s a defense to strict products liability only when the defendant prove[s] that an unforeseeable abuse or alteration of the product after

7

it left the manufacturer's hands was the [s]ole reason that the product caused an injury." *Campbell v. S. Pac. Co.*, 583 P.2d 121, 124 (Cal. 1978). Ramirez's knowledge that the grinder malfunctioned the day before the accident did not satisfy ITW's burden because Ramirez testified that she assumed the grinder had been fixed and, regardless, ITW offered no evidence that her use was unforeseeable. *See Akers*, 219 Cal. Rptr. at 520–21 (affirming judgment on design defect claim for dockworker who was injured after being "warned by his superiors" not to use the "broken dockboard"). Nor can ITW prove that the grinder's poor maintenance was unforeseeable, as Appellants presented complaints against ITW from users injured by the grinder, and "it may be foreseeable that workers will resort to alternative, less safe means" of maintaining a machine "because of the time or trouble involved using the 'safe' way." *DeLeon v. Commercial Mfg. & Supply Co.*, 195 Cal. Rptr. 867, 872 (Ct. App. 1983) (reversing summary judgment for manufacturer on design defect claim based on worker's injury from cannery's "food processing equipment").

## II.    Excluding Appellants' experts was error

The district court abused its discretion in excluding the testimony and opinions of Appellants' experts. *See Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014).

Ned Wolfe, an experienced mechanical engineer, opined that a solenoid

clamp lock was an alternative, safer design used in industrial mixers, washing machines, and other industrial equipment to keep them closed until their spinning machinery comes to a stop. Although Wolfe had worked on cases involving blenders and food grinders and was familiar with solenoid clamp locks used in industrial mixers and washing machines, the district court excluded his testimony because he: (1) could point to no commercial kitchen equipment that uses solenoid clamp locks; (2) did not show that the proposed design has gained general acceptance in the scientific community; and (3) had no experience with solenoid clamp locks on grinders like the one at issue here. But a plaintiff is not required to show that an alternative, safer design is already used in similar products or has gained industry acceptance, as a product's compliance with "industry custom or usage is irrelevant to the issue of defect." *Grimshaw v. Ford Motor Co.*, 174 Cal. Rptr. 348, 378 (Ct. App. 1981). Given that a plaintiff need not show an alternative, safer design is already used in similar products, it follows that her expert is not required to have experience with that safer design in such products. Otherwise, "there could be no first case demanding improvement of an unsafe (but widely accepted) product design." *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 863 (9th Cir. 2011).

The district court also faulted Wolfe for not conducting tests or scientific analysis of his proposed safer design. But the reliability of an expert's theory turns

9

on whether it "can be tested," *Messick*, 747 F.3d at 1197, not whether he has tested it himself. Wolfe's alternative design was *capable* of being tested; ITW simply chose not to do so, despite bearing the burden under the risk-benefit test to prove that adapting the solenoid clamp lock to the grinder was not feasible.

Nor could Wolfe be excluded for failing to subject the proposed design to peer review. Exclusion of experts due to lack of peer review reflects a rote, mechanical application of Rule 702 that this court has rejected in products liability cases where "[p]eer reviewed scientific literature may be unavailable because the issue may be too particular, new, or of insufficiently broad interest, to be in the literature." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) *as amended* (Apr. 27, 2010); *White v. Ford Motor Co.*, 312 F.3d 998, 1007 (9th Cir. 2002), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003).

For similar reasons, it was error to exclude Appellants' expert Douglas Bennett, an electrical engineer. Among other topics, Bennett testified that an employee's splicing of wires in the grinder did not affect the operation of the stop button. This testimony was relevant to rebut ITW's affirmative defense that such splicing caused Ramirez's injuries.

The district court excluded Bennett's opinions because he lacked familiarity with the grinder "in its intended, pristine condition" and had no "experience with commercial food equipment." But the "lack of particularized expertise goes to the

weight accorded [an expert's] testimony, not to the admissibility of her opinion as an expert." *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993); *Exum v. Gen. Elec. Co.*, 819 F.2d 1158, 1163 (D.C. Cir. 1987) (holding it was error to find that engineer who lacked expertise in "kitchen design" and had "never examined a kitchen of a fast food restaurant" was unqualified to testify in products liability action against manufacturer of industrial fryer).

**REVERSED and REMANDED.**