# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMEENA BROWN and EVAN BRAGGS, Individually and as Co-Administrators of the Estate of A.B., deceased,

Plaintiffs,

v.

FISHER-PRICE, INC. and MATTEL, INC.

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N20C-01-067 PAW

Submitted: November 8, 2024
Decided: December 20, 2024

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Defendants' Motion to Exclude the Testimony of Plaintiffs' Expert Erin Mannen, Ph.D. Pursuant to D.R.E. 702;*

## DENIED, in part and GRANTED, in part.

Robert J. Leoni, Esquire, Shelsby & Leoni, PA, *Attorney for Plaintiffs.*

Jennifer C. Wasson, Esq., Carla M. Jones, Esq., and Ryan Kingshill, Esq., of Potter Anderson & Corroon LLP, *Attorneys for Defendants*.

**WINSTON, J.**

# I.    INTRODUCTION[1]

Defendants move to exclude the expert testimony of Dr. Erin Mannen under D.R.E. 702.[2]  Plaintiffs seek to introduce Mannen's testimony to show the use of inclined sleeper products allow infants to roll from their back more easily than if they were placed on a flat sleeping surface.[3]  Mannen's testimony would also show the use of an inclined sleeper makes it harder for an infant to correct a compromising position.[4]  Mannen's report also touches on the topic of rebreathing.[5]  Defendants contend: (1) Mannen does not qualify as a medical doctor and cannot give medical opinions; (2) Mannen failed to account for the specific conditions present in this case, thus preventing any of the findings of her studies from being applied to the instant set of facts; and (3) Mannen's studies do not support her conclusion and did not utilize reliable methodology.[6]

---

[1] This Memorandum Opinion and Order references the factual and procedural background outlined in the Court's Memorandum Opinion and Order upon Consideration of Defendants' Motion for Summary Judgment, which the Court incorporates by reference.  Unless otherwise noted, defined terms are ascribed the same meaning as in the Court's Summary Judgment Memorandum Opinion.

[2] Defs.' Mot. to Exclude Pls.' Expert Erin Mannen, PH.D., D.I. 184.

[3] Pls.' Opp'n to Defs.' Mot. to Exclude Erin Mannen, PH.D., D.I. 211.

[4] *Id*. at 1-2.

[5] D.I. 186 Def.'s Ex. C at 4 ("Dr. Mannen's Report"); Mannen's testimony regarding rebreathing is examined in a separate Memorandum Opinion and Order.

[6] D.I. 184 at 2-4.

## II.    STANDARD OF REVIEW

Delaware Rule of Evidence ("D.R.E.") 702 governs the admission of expert testimony.  Under D.R.E. 702, expert opinion testimony is admissible provided that the witness "is qualified as an expert by knowledge, skill, experience, training, or education" if:

> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of the fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert has applied the principles and methods to the facts of the case.[7]

The burden falls on the party seeking to admit the expert testimony to show, by a preponderance of the evidence, its admissibility under D.R.E. 702.[8]  "Once expert testimony is challenged, the reviewing court must ensure that the proffered testimony is both relevant and reliable."[9]  To fulfill this duty, this Court acts as gatekeeper, determining if "the reasoning or methodology underlying the testimony is scientifically valid and … whether that reasoning or methodology properly can be

---

[7] D.R.E. 702.

[8] *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del. 2006).

[9] *Scottoline v. Women First, LLC*, 2023 WL 2325701 at *3 (Del. Super. Mar. 1, 2023) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)).

applied to the facts in issue."[10]  In making that determination, the Court applies a five-step test that examines whether:

> (1) the witness is qualified as an expert by knowledge, skill, experience, training[,] or education; (2) the evidence is relevant [and reliable]; (3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (4) the expert will assist the trier of fact to understand the evidence or to determine a fact in issue; and (5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[11]

For scientific evidence to be deemed reliable, the testimony must be rooted in science and derived from the scientific method. [12]  Expert testimony is relevant when it assists the trier of fact to understand the evidence or to determine a fact in issue. Thus, the core of a *Daubert* analysis is the "principles and methodology" used in formulating an expert's testimony, not on the expert's resultant conclusions.[13]  This Court possesses "broad latitude to determine whether any or all of the *Daubert*

---

[10] *Gen. Motors Corp. v. Grenier*, 981 A.2d 531, 536 (Del. 2009) (internal quotations omitted) (quoting *Daubert*, 509 U.S. 579 at 592-93).

[11] *Norman v. All About Women, P.A.*, 193 A.3d 726, 729-30 (quoting *Smith v. Grief*, 106 A.3d 1050 (Del. Jan. 8, 2015)).

[12] *Daubert*, 509 U.S. at 590-94.

[13] *Bowen*, 906 A.2d at 794 (citing *Daubert*, 509 U.S. at 595).

factors are reasonable measures of reliability in a particular case."[14]  "A strong preference exists for admitting evidence that may assist the trier of fact."[15]

## III.  ANALYSIS[16]

### A.  MANNEN QUALIFIES AS AN EXPERT ON BIOMECHANICS.

As a threshold matter, Mannen qualifies as an expert on biomechanics.  She possesses a Ph.D. in Mechanical Engineering.[17]  She conducted, and continues to conduct, research on "infant biomechanics," including studying "how babies move and use their muscles."[18]  Mannen has published peer-reviewed articles and authored reports for the United States Consumer Product Safety Commission (the "CPSC").[19] Her knowledge, skill, experience, training, and education meet the level of qualification required under *Daubert*.  Defendants do not meaningfully contest Mannen's qualifications as an expert on biomechanics.

---

[14] *Grenier*, 981 A.2d at 536 (internal quotations omitted) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

[15] *Norman*, 193 A.3d at 730.

[16] The Court reviewed Plaintiffs' November 7, 2024, filing and Defendant's response regarding the recent decision in *Danielle Clark v. The Boppy Company, LLC et al.*, No. 1:22-cv-02120 (S.D. Ind. Nov. 6, 2024).  D.I. 287; D.I. 290.  In that opinion, the United States District Court for the Southern District of Indiana denied a motion to exclude Dr. Erin Mannen in a separate matter.  The Court finds that the decision in that case has no utility here, as it concerns a different report authored by Dr. Mannen which offers distinct opinions from those in the present case.

[17] Dr. Mannen's Report.

[18] *Id*.

[19] *Id*.

The specific causation testimony Defendants object to concerns the following conclusions: (1) rebreathing and its impact;[20] (2) the design of the RnP facilitated A.B. turning his head and coming into contact with the soft mesh siding of the RnP;[21] (3) A.B. died from either positional asphyxiation or suffocation;[22] and (4) the RnP caused A.B.'s death.[23] Defendants argue Mannen's lack of medical expertise precludes her from opining on the topics of rebreathing and A.B.'s cause of death.[24] Defendants further assert a blanket objection to "any other specific causation opinion."[25] Plaintiffs contend Mannen does not offer any medical opinion, and all of her opinions regarding specific causation are based on her expertise in biomechanics.[26]

## B. MANNEN'S CAUSATION TESTIMONY IS GENERALLY ADMISSIBLE.

Defendants posit that Mannen cannot testify as to specific causation.[27] Defendants assert Mannen does not qualify as a medical doctor, and so cannot opine

---

[20] Tr. of Oral Arg. at 46-48, D.I. 278 (June 17, 2024).

[21] *Id*.

[22] D.I. 184 at 29.

[23] *Id*.

[24] *Id*.

[25] *Id*.

[26] D.I. 211 at 13-14.

[27] D.I. 186 at 21.

as how A.B. died or how the RnP may have contributed to his death.[28]  Essentially, Defendants argue specific causation testimony in this case requires medical expertise and any causation testimony centered on biomechanics must be constrained to general causation testimony.[29]

General causation testimony focuses on whether a given item can cause the injuries at issue, whereas specific causation focuses on showing the item actually caused the injuries in the instant case.[30]  The admissibility of Mannen's general causation testimony depends on the reliability and relevance of those opinions, as discussed *supra*.  The Court must also weigh those factors in considering Mannen's specific causation testimony, but only after determining if Mannen otherwise qualifies to offer specific causation testimony.

"Admissible biomechanical testimony bridges the gap between the general forces at work in an accident determined by physical forces analysis … and the specific injuries suffered by the particular person who was affected by those forces."[31]  The Delaware Supreme Court has "expressly stated that biomechanical

---

[28] *Id*. at 22.

[29] *Id*.

[30] *Tumlinson v. Advanced Micro Devices, Inc.*, 2013 WL 7084888 at *1 (Del. Super. Oct. 15, 2013), *aff'd*, 81 A.3d 1264 (Del. 2013).

[31] *Eskin v. Carden*, 842 A.2d 1222, 1228 (Del. 2004).

expert opinion may be admissible without being related to expert medical opinion."[32] An expert on biomechanics, such as Mannen, may testify as to specific causation if that testimony would otherwise be admissible under the analysis prescribed by *Daubert* for other forms of expert testimony.

Defendants argue Mannen's opinion on rebreathing should be excluded because she does not qualify as a pulmonologist and improperly relies on the report of Leshner.[33] Mannen's lack of qualification as pulmonologist does not necessarily preclude her from opining on rebreathing, as an expert may rely on the reports of other experts to help form the basis of their own opinion.[34]

In her report, she details the analysis she conducted on the data generated by Leshner's report.[35] Her opinion, formed based on her analysis of that data, states "in a side-lying or a 90-degree head turn situation, [ ] an infant would experience significantly increased $CO_2$ inhalation simply due to the design of the product."[36]

---

[32] *Grief*, 106 A.3d at 1050; *see also Mason v. Rizzi*, 843 A.2d 695 (TABLE) (Del. 2004) ("[W]e reject the notion, suggested by the term "medical causation," that biomechanical expert opinion can never be admitted unless the opinion is seconded by or relied upon by a physician in forming that physician's opinion about whether an accident caused physical injury to a person.").

[33] Tr. of Oral Arg. at 47-48.

[34] *Lee v. Holbrook*, 2021 WL 5492666 at *2 (Del. Super. Nov. 22, 2021) (admitting the testimony of a biomechanics expert when that expert relied on the report of an expert in neuroradiology to help form his opinion).

[35] Dr. Mannen's Report at 28.

[36] *Id*.

Mannen synthesized Leshner's data; considered her peer-reviewed research, her inspection of the product, and her own expertise in biomechanics;[37] and concluded the environment created by placing an infant in the RnP creates "a dangerous CO2 rebreathing and/or suffocation scenario."[38]

The admissibility of Leshner's testimony is the subject of another *Daubert* motion.[39] The admissibility of that testimony, however, may not materially affect Mannen's ability to rely on it. Under D.R.E. 703, an expert may consider inadmissible evidence if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject …"[40] Mannen relies on the data generated by a study conducted by Leshner, an engineer.[41] More, Mannen does not rely on the specific amount of carbon dioxide found in Leshner's report, but rather on her own analysis as to the percent increase of carbon dioxide found when the study tested different sleeping situations.[42] However, due to the

---

[37] *Id*. at 31-32.

[38] *Id*. at 32.

[39] *See* Defs.' Mot. to Exclude Expert Test. Regarding Rebreathing Pursuant to D.R.E. 702, D.I. 164.

[40] D.R.E. 703; *see also Norman*, 193 A.3d at 730.

[41] Dr. Mannen's Report at 28.

[42] *Id*. at 28. Defendants contend Leshner himself admits the actual carbon dioxide intake he measured is likely inflated due to the nature of the study. As Mannen does not rely on the actual carbon dioxide intake, but rather a rate of comparison, this potential flaw in Leshner's report does not render the report unreliable to the point of precluding Mannen from relying on it.

deficiencies in Leshner's methodology, Mannen may not rely on Leshner's Report.[43] Mannen's conclusion that "in a side-lying or a 90-degree head turn situation, [ ] an infant would experience *significantly* increased $CO_2$ inhalation simply due to the design of the product"[44] was calculated with the data from Leshner's unreliable methodology, and, accordingly, that conclusion must be struck from her testimony.

Mannen's other conclusions regarding whether an infant would be at risk for rebreathing in the RnP were based on her examination of an RnP, her peer-reviewed research, and her expertise as a biomechanical engineer.[45] Accordingly, Mannen's testimony regarding rebreathing that does not rely on Leshner's methodology is admissible.

While Mannen may not rely on Leshner's report, Mannen may rely on the reports of other experts in this case in her analysis of how the RnP may have caused A.B.'s death. Her opinion details the specific ways, based on her expertise in biomechanics, the RnP facilitated A.B. turning onto his side.[46] Critically, her report does not conclude how A.B. died—a determination likely beyond the scope of her expertise. Her ultimate conclusion finds:

---

[43] Leshner's methodology is discussed more fully in a separate Memorandum Opinion and Order.

[44] Dr. Mannen's Report at 28 (emphasis added).

[45] Dr. Mannen's Report at 3-4.

[46] *Id*. at 31-32.

the defective design of the [RnP] results in an unreasonably dangerous biomechanical scenario that [ ] facilitated [A.B.'s] roll from supine to his left side. Once he was on his side, the design of the [RnP] led to his face contacting the soft goods backed by solid plastic, making normal breathing more difficult or impossible.[47]

Contrary to Defendant's characterization, that conclusion lacks any opinion requiring medical expertise. Mannen utilized her expertise in biomechanics to opine: (1) how the RnP design allowed A.B. to turn onto his side; (2) how the RnP design made it more difficult for A.B. to correct his position once on his side; (3) the risk of rebreathing and suffocation created by the RnP; and (4) the increased fatigue caused by an infant unable to correct his position.[48] None of those opinions offer a medical opinion. All those opinions are either the direct product of Mannen's expertise, or her reasonable reliance on the reports of other experts. Thus, Mannen's lack of medical expertise does not preclude her from offering those opinions.[49]

---

[47] *Id*. at 32.

[48] *Id*. at 31-32.

[49] It must be noted, however, that Mannen cannot opine as to the cause of A.B.'s death in the same way a medical doctor would. She may testify as a bridge between how the expert doctors opine A.B. died and the design of the RnP. She may not offer a medical opinion as to the precise cause of A.B.'s death—suffocation, asphyxiation, or otherwise—but she may offer her testimony in support of explaining those conclusions provided by other doctors. Mannen's report does not include such a medical opinion, and Plaintiffs represent that she will not offer one. D.I. 211 at 13. This ruling does not preclude Defendants from future objections should Mannen's testimony stray into the realm of medical expertise.

## C. MANNEN'S STUDIES SUFFICIENTLY FIT THE INSTANT FACTS AND ARE ADMISSIBLE.

"[A]n expert's methodology must be not only reliable intrinsically but also be reliably applied to the facts of the specific case."[50] Expert testimony must be relevant to the facts of a given case to be admissible.[51] Defendants contend Mannen's studies, and subsequent opinions based on those studies, stand too far removed from the facts present in this case to be admissible.[52]

Mannen's various studies examined infants and their muscle activity when placed at various inclines.[53] Mannen studied healthy infants wearing only a diaper.[54] On the night of his death, A.B.'s limbs were restricted by a swaddle and layers of clothing.[55] A.B. also suffered from hypertonicity, a condition of excessive muscle tone that may limit an infant's range of motion.[56] Defendants argue these variations

---

[50] *Scaife v. Astrazeneca LP*, 2009 WL 1610575 at *15 (Del. Super. June 9, 2009) (quoting *Grenier*, 2009 WL 267665 at *4).

[51] *Daubert* at 591.

[52] D.I. 184 at 23.

[53] Dr. Mannen's Report at 7-15.

[54] *Id*. at 7-8.

[55] D.I. 184 at 23-24.

[56] *Id*. at 24; *see also Hypertonic*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/hypertonic (last visited Dec. 17, 2024).

between the facts surrounding A.B.'s death and Mannen's studies prevent Mannen's opinion from possessing the requisite fit to be admissible.[57]

Expert testimony satisfies the relevance, or "fit" requirement under *Daubert* if it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue."[58] "Testimony is not inadmissible merely because it fails to account for some particular condition or fact which the adversary considers relevant."[59] Mannen's report considered the effect inclined sleep products have on an infant's ability to roll from their back, an infant's ability to correct a compromised position after rolling, the rate at which an infant attempting to correct its position would fatigue, and the consequences those compromising positions would have on an infant's breathing.[60] Mannen applied those considerations to the specific facts surrounding A.B.'s death, and concluded the RnP's biomechanical environment contributed to A.B.'s death.[61]

Evaluating the fit of Mannen's report necessitates a brief recitation of the facts present in this case.[62] A.B. suffered from several medical problems resulting from his premature birth, including hypertonicity. A.B. also suffered from developmental

---

[57] *Id*. at 23-24.

[58] *Daubert*, 509 U.S. at 591.

[59] *O'Riley v. Rogers*, 69 A.3d 1007, 1012 (Del. 2013) (internal quotations omitted) (quoting *State v. Freeman*, 538 A.2d 371, 384 (NJ. Super. Ct. App. Div. 1988)).

[60] Dr. Mannen's Report at 10-12.

[61] *Id*.

[62] These facts are uncontested by the parties at this stage.

delays.   Brown placed A.B., clothed and swaddled, on his back in the RnP. Sometime during the night, A.B. came to be on his side.[63]   When Brown awoke, she discovered A.B. "stiff."[64]   Emergency services were unable to revive A.B.

Mannen concedes she did not study infants who were clothed or swaddled, or any infants suffering from hypertonicity.[65]   Nevertheless, her studies and report explain how an infant previously unable to roll on his own may have been able to roll because of the incline present in the RnP.   Further, her report explains how once A.B. rolled to his side, he may have been unable to reposition and would have struggled to breathe correctly.   These explanations are relevant to the ultimate issue in this case—how the RnP's design may have contributed to A.B.'s death.   These explanations will assist the trier of fact in understanding how an infant rolls, what happens when an infant presses his face against the side of a product like the RnP,

---

[63] At oral argument, Defendants contended that all Plaintiffs' expert opinions were factually flawed because they failed to correctly account for the position of A.B.'s face as described by his mother in her deposition.  This assertion is incorrect.  *See* Dr. Calhoun's Report at 6; Dr. Hoffman's Report at 6; Dr. Mannen's Report at 5; Dr. Rosen's Report at 6; Dr. Ross' Report at 4.  Further, challenges to the factual basis of an expert opinion go to credibility, not admissibility.  An expert's testimony will be excluded on the factual basis grounds only in the narrow circumstance where the expert has completely neglected the core facts of the case.  *See Henlopen Hotels, Inc. v. United National Insurance Co.*, 2020 WL 233333 (Del. Super. Jan. 15, 2020).  This is not the case here.

[64] D.I. 184 at 7.

[65] Dr. Mannen's Report at 26-29.

and the biomechanical effects an inclined surface has on an infant. *Daubert*'s fit requirement requires nothing more.

Defendants argue that the precedent set forth in the personal injury cases *Eskin*[66] and *Mason*[67] should apply here to preclude Mannen's testimony.[68] Defendants posit that Mannen, like the experts in *Eskin*, relied on tests that did not involve persons with the victim's characteristics.[69] Further, Defendants argue that the differences between the victim and the studied persons cannot be the subject of cross-examination under the Delaware Supreme Court's holding in *Mason* because the study examined persons without accounting for the victim's preexisting condition and, accordingly, would result in juror confusion.[70]

In both *Eskin* and *Mason*, the accident victims suffered from pre-existing medical conditions that arguably made them more susceptible to injury than a "normal" person.[71] In those cases, the biomechanical experts had not analyzed the impact of those pre-existing medical conditions and had no basis on which to assert

---

[66] 842 A.2d 1222 (Del. 2004).

[67] 89 A.3d 32 (Del. 2004).

[68] Defs.' Reply Br. in Support of Def.'s Mot. to Exclude Pls.' Expert Erin Mannen, D.I. 233, at 11-14.

[69] *Id*. at 11.

[70] *Id*. at 13-14.

[71] *See Eskin*, 842 A.2d at 1230-31; *see also Mason*, 843 A.2d at 34.

that their conclusions remained valid when applied to those particular victims.[72] As a result, this Court held that, "the trial judge could properly conclude that there was a danger that the jury would be confused or misled into believing that [the accident victims] fell within the 'field's' 'one-size-fits-all' statistical range."[73]

Here, however, A.B. suffered from pre-existing medical conditions that would make him *less* susceptible to rolling (and, thus, injury) in comparison to the infants studied by Mannen.[74] Accordingly, in the present case, Mannen has a basis on which to assert that her conclusions regarding the risk of rolling for infants not suffering from hypertonicity could be applied to A.B. Mannen, unlike the biomechanics experts in *Eskin* and *Mason*, provides an "ordinary infant" standard and applies that standard to an infant *less* susceptible to injury; thus, there is no additional susceptibility to injury that would invalidate her conclusions as applied to A.B.

Many of Defendant's arguments on the fit of Mannen's report center on facts that Defendant's contend Mannen ignored or failed to adequately consider. Those arguments apply to the weight and credibility of Mannen's report. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

---

[72] *Eskin*, 842 A.2d at 1231; *Mason*, 843 A.2d at 34-35.

[73] *Eskin*, 842 A.2d at 1231.

[74] D.I. 184 at 24.

16

evidence."[75]  This Court must err on the side of admitting "shaky but admissible evidence."[76]  The proper avenue for Defendants to challenge this testimony will be through cross-examination.

**D.    MANNEN'S STUDIES EMPLOYED RELIABLE METHODOLOGY.**

The last hurdle Mannen's testimony must clear to be admissible concerns the reliability of her methodology.  Defendants assert several of the studies Mannen relies on have not been subjected to peer review.[77]  Defendants argue Mannen's "easier-to-roll" hypothesis is unsupported by the studies she cites.[78]  As to Mannen's conclusion that a side-facing infant would come into contact with the side of the RnP, leading to an increased risk in suffocation, Defendants posit Mannen's demonstration using a soccer ball in place of an infant "is not based on any recognized methodology for examining potential respiratory compromises."[79]

This Court possesses "broad latitude to determine whether any or all of the *Daubert* factors are reasonable measures of reliability in a particular case."[80]  This

---

[75] *Daubert*, 509 U.S. at 596.

[76] *Id*. (quoting *Messick v. Novartis Pharmaceuticals Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)).

[77] D.I. 184 at 26.

[78] *Id*.

[79] *Id*. at 32.

[80] *Grenier*, 981 A.2d at 536 (internal quotations omitted) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

Court considers factors such as "testing, peer review, error rates, and acceptability in the relevant scientific community," and may consider any other relevant factors.[81] A scientific opinion, grounded in the scientific method, may be admissible even if the challenging party can show the opinion's ultimate conclusion may be open to dispute.[82]

Mannen's studies—the 2019 Consumer Product Safety Commission study (the "CPSC study") and the studies identified as "Wang 2020" and "Wang 2021"— examined the effects of sleep surfaces on an infant's muscle activity to determine "if the design of inclined sleep products impacted suffocation risk from a movement and body position perspective."[83] While conducting the CPSC study, Mannen studied ten infants placed on sleeping surfaces with increasing levels of incline.[84] Mannen and her team monitored body position and muscle activity.[85] As the CPSC commissioned the CPSC study, some of the details of that study were confidential.[86]

---

[81] *Id*. (internal quotations omitted) (quoting *Kumho Tire Co.*, 526 U.S. at 141).

[82] *Id*.

[83] Dr. Mannen's Report at 8.

[84] *Id*.

[85] *Id*.

[86] *Id*. at 7.

Mannen subsequently conducted a similar study involving 15 infants, and published those results in peer-reviewed journals as the Wang 2020 and Wang 2021 studies.[87]

Those studies found that infants placed in inclined sleepers experience different muscle activity and body position compared to infants on flat surfaces.[88] Mannen opines that those differences make it easier for an infant to roll from supine to prone—a roll that necessitates the infant being on his side if only for a brief moment—which places the infant at greater risk of maneuvering into a compromised position.[89] The studies were not intended to measure the frequency infants rolled when placed in inclined sleepers, but rather the inclined sleeper's biomechanical effect on an infant's *ability* to roll.[90] Mannen explained her methodology; addressed what each finding means generally and in relation to A.B.'s case; considered potential errors within the studies; and subjected both the Wang 2020 and Wang 2021 studies to peer review.[91] She based her conclusions on the data her studies generated and her specialized knowledge. Accordingly, those conclusions are admissible under *Daubert*. To the extent Defendants challenge the validity of Mannen's studies because they did not specifically examine the RnP sleeper in this case, instead testing

---

[87] *Id*. at 8.

[88] *Id*. at 8-11.

[89] *Id*.

[90] *Id*.

[91] *Id*.

19

other inclined sleeping surfaces, the distinction between the RnP and other inclined sleepers goes to the credibility of Mannen's studies, not their admissibility.

More, Defendants appear to misinterpret Mannen's use of a soccer ball in her opinion. Defendants contend "that test, however, which involved manipulating a soccer ball by hand in a [RnP], is not based on any recognized methodology for examining potential respiratory compromises, and the test appears to have used a [RnP] model with an additional pad…"[92] Mannen, however, did not perform a test with a soccer ball. Rather, she used the soccer ball in a series of pictures to demonstrate how something approximately the size of an infant's head would be positioned after a 90-degree turn.[93] Mannen's use of a soccer ball as a stand-in for an infant's head appears reasonable. As the soccer ball's utilization was illustrative rather than substantive, that illustration is admissible. Defendants are certainly welcome to draw the jury's attention to any material differences.

## IV.  CONCLUSION

Mannen based her opinion on the facts of this case, studies she conducted, her own education and expertise, and the reports of other experts involved in this litigation. She relied upon peer-reviewed studies, as well as a study commissioned by the CPSC. She utilized a reliable, scientific methodology. Many of Defendants'

---

[92] D.I. 184 at 32.

[93] Dr. Mannen's Report at 27.

20

challenges to her opinion are grounded in the specific fit of Mannen's findings to the instant case, as well as contrarian studies Defendants assert Mannen fails to appreciate. Those challenges relate to credibility and may be dealt with during cross-examination of Mannen. As Mannen's testimony "is scientifically valid" and her reasoning "properly can be applied to the facts in issue," her testimony is admissible under *Daubert*.[94]

Mannen may testify regarding rebreathing only to the extent that she relies on peer-reviewed studies or her own expertise; accordingly, Mannen's rebreathing testimony may not touch on Leshner's Report or any conclusions reliant on his methodology.

**IT IS SO ORDERED.**

/s/ Patricia A. Winston
**Patricia A. Winston, Judge**

---

[94] *Grenier*, 981 A.2d at 536 (internal quotations omitted) (quoting *Daubert*, 509 U.S. at 579).